UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cv-00528-FDW

| | |
|---|---|
| KIYA CUNNINGHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| WELLS FARGO N.A, ) | |
| ) | |
| Defendant. ) | |

THIS MATTER is before the Court on Defendant's Renewed Motion for Summary Judgment, (Doc. No. 79), and Defendant's Motion to Strike, (Doc. No. 88), which seeks to strike Plaintiff's brief in opposition to the pending motion for summary judgment. Pursuant to the principles in Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), the Court advised Plaintiff of her right to respond to the Motion for Summary Judgment and the burden she carries in doing so. (Doc. No. 77). The Court also allowed Plaintiff additional time to file her response to the summary judgment motion, (Doc. No. 84); however, Plaintiff hand-delivered her response to be filed with the Clerk of Court eight days after the deadline set by this Court. (Doc. No. 85). For the reasons that follow, the Court GRANTS the Motion to Strike and GRANTS the Motion for Summary Judgment.

### I. BACKGROUND

Plaintiff filed this action against her employer, Defendant Wells Fargo, asserting several causes of action related to her employment. She is an African American female who became employed by Wells Fargo in 2006. In 2018, Defendant promoted Plaintiff to Operational Risk Consultant 4. Plaintiff took FMLA leave from August 20 through October 24, 2018, for surgery

1

related to uterine fibroids. On July 5, 2019, Plaintiff filed a Charge of Discrimination ("Charge") on July 5, 2019, checking the boxes for race, sex, disability, and retaliation. The EEOC dismissed her Charge and this suit followed. In short, Plaintiff's Second Amended Complaint, which now controls, contends Defendant discriminated and retaliated against her by reassigning job duties to others outside her protected class, taking other action—such as cancelling meetings—to reduce Plaintiff's ability to perform her job duties, and provided a performance evaluation that resulted in lost earnings and an inability to advance her career with Defendant. Defendant has moved for summary judgment on all accounts, arguing no evidence supports Plaintiff's claims such that Defendant is entitled to judgment as a matter of law.

## II.  MOTION TO STRIKE

Defendant has filed a motion to strike Plaintiff's brief in opposition to the pending motion for summary judgment. Defendant argues that Plaintiff's brief is untimely and violates this Court's standing orders governing word count limits.

Plaintiff, who appears *pro se*, is entitled to some deference from courts when it comes to procedural rules. Haines v. Kerner, 404 U.S. 519, 521 (1972); Bauer v. Commissioner, 97 F.3d 45, 49 (4th Cir.1996) (courts will liberally treat errors made by pro se litigants, especially when procedural rules are involved). Notwithstanding her *pro se* status, she is "subject to the time requirements and respect for court orders without which effective judicial administration would be impossible." Ballard v. Carlson, 882 F.2d 93, 96 (4th Cir.1989), cert denied, 493 U.S. 1084 (1990). Moreover, Plaintiff has repeatedly received leniency from this Court for violations of this Court's orders, Federal Rules, Local Rules, and this Court's Standing Orders; and in each instance, the Court cautioned Plaintiff that failure to comply with applicable rules could result in sanctions

2

or dismissal of her case. (See Doc. Nos. 39, 41, 51, 70, 75) And, most relevant to the instant motion to strike, this Court granted an extension of time to July 26, 2022, which was the deadline *requested by Plaintiff*, and explicitly advised—*in bold and underlined font*—Plaintiff of her required compliance with the deadline set for filing her response in opposition to the summary judgment motion: "The Court does not anticipate allowing Plaintiff any additional extensions of time, and Plaintiff should plan accordingly, including making alternative arrangements for preparing her response should her computer continue to present technical difficulties." (Doc. No. 84).

Instead of complying with the deadline clearly set forth in the Court's order granting her motion for extension of time, Plaintiff filed her response brief by hand-delivery to the Clerk's Office *eight* days after the deadline set by this Court and failed to offer any explanation or seek permission from this Court to do so. Remarkably, Defendant's reply brief identified Plaintiff's failure to timely file her response, (Doc. No. 87), and in seeking to file a "Response to Defendant's Reply," (Doc. No. 90), Plaintiff failed to proffer any reason or explanation for her noncompliance with this Court's filing deadline.

The Court notes Plaintiff is an educated professional, and her pleadings with this Court demonstrate she is sophisticated in drafting legal pleadings and has the intellectual capacity to understand her obligation to follow court orders and to appreciate the warnings about possible sanctions for failure to follow those orders. In addition to the order allowing an extension of time, (Doc. No. 84), the Court has repeatedly advised Plaintiff and cautioned her about the importance of and requirement that she comply with applicable rules and orders from this Court. (See, e.g.,

3

Doc. Nos. 51, 70, 75). Accordingly, based on the record in this case, the Court in its discretion strikes Plaintiff's response in opposition to Defendant's Motion as untimely.[1]

In addition, the Court *sua sponte* strikes Plaintiff's "Response to Defendant's Reply," (Doc. No. 90), because the Local Rules in this District make clear that surreply briefs are not permitted absent permission from the Court (which Plaintiff neither sought nor received). See LCvR 7.1(e) ("Surreplies are neither anticipated nor allowed by this Rule, but leave of Court may be sought to file a surreply when warranted.").

### III. MOTION FOR SUMMARY JUDGMENT

Defendant has moved for summary judgment on all of Plaintiff's claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In light of the Court's striking of Plaintiff's response brief, the facts presented by Defendant are not in dispute. Nevertheless, the Court must still consider the merits of Defendant's motion for summary judgment, specifically whether the undisputed facts contained in the materials before the Court show that Defendant is entitled to judgment. See, e.g., Custer v. Pan American Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) ("Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to a 'judgment as a matter of law.'"); Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 409 n.8 (4th Cir. 2010) ("In considering a motion for summary

---

[1] In light of this ruling, the Court summarily adopts Defendant's other argument regarding Plaintiff's failure to abide by the word count limit governing this case and finds that Plaintiff's failure to comply with this limit is yet another example of her failure to comply with this Court's rules and provides another basis for striking the pleading. (Doc. No. 27).

4

judgment, the district court must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." (cleaned up)); see also Fed. R. Civ. P. 56.

In this case, Plaintiff has asserted several claims in the operative Complaint:[2] (1) discrimination based on race and color and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 *et seq.* ("Title VII") and under 42 U.S.C. § 1981; (2) hostile work environment under Title VII and Section 1981; (3) interference/retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and (4) discrimination based upon actual and perceived disability under the Americans with Disability Act of 1990 ("ADA") 42 U.S.C. § 12101 *et. seq.* The Court addresses these in turn.

A.  Race and Color Discrimination under Title VII and Section 1981 and ADA Discrimination

The McDonnell Douglas framework applies to Section 1981 and Title VII discrimination, ADA claims, and retaliation claims under all three statutes. Billingsly v. Federal Home Loan Mortgage Corporation, 849 Fed. Appx. 413, 414 (4th Cir. 2021) (citing Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)); Ennis v. National Ass'n of Business and Educational Radio Inc., 53 F.3d 55, 58 (4th Cir. 1995) (citing cases) (stating "we hold that the McDonnell Douglas scheme of proof does apply to appropriate claims under the ADA.).

> The McDonnell Douglas framework is comprised of three steps: (1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S.

---

[2] The Court notes Plaintiff originally filed this action *pro se*, and she subsequently obtained counsel who filed the Second Amended Complaint, (Doc. No. 22). That unverified pleading is the operative Complaint here; however, the Court notes that counsel subsequently withdrew, and since then, Plaintiff has proceeded *pro se*.

5

248, 252–56, (1981); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, (2000) (holding that the employer's burden in step two is one of production, not persuasion). For status-based discrimination claims, the employee must "show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 343 (2013).

Guessous, 828 F.3d at 216–17.

Here, Plaintiff must establish: (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was performing in a manner that satisfied the employer's legitimate job expectations, and (4) the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination." Jenkins v. Trs. of Sandhills Cmty. Coll., 259 F. Supp. 2d 432, 443 (M.D.N.C. 2003) (quoting EEOC v. Sears Roebuck Co., 243 F.3d 846, 851 n. 2 (4th Cir. 2001)), aff'd, 80 F. App'x 819 (4th Cir. 2003) (unpublished per curiam opinion); see Holland v. Wash. Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007).

Under this record, Plaintiff's Title VII discrimination, section 1981 discrimination, and ADA discrimination claims fail because Plaintiff did not suffer a cognizable adverse employment action. "[T]he law is very specific as to what this court can consider as an adverse employment action." Jones v. Dole Food Co., Inc., 827 F. Supp. 2d 532, 549 (W.D.N.C. 2011). "In evaluating the disciplinary measures, 'employment discrimination laws require as an absolute precondition to suit that some adverse employment action has occurred.'" Id. (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir.1985)). To constitute an adverse employment action, the action must adversely affect the terms, conditions, or benefits of employment. See Munday v. Waste Management, 126 F.3d 239, 243 (4th Cir. 1997); Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007).

During the time period relevant to the Title VII and ADA claims within the scope of the Charge in this case,[3] the record does not reflect any cognizable adverse employment action occurred to Plaintiff. Plaintiff's deposition testimony, attached in support of Defendant's motion, indicates she could not identify anyone who discriminated against her and she could not testify as to a single instance where she received an adverse employment action. Her deposition testimony is fatal to her claims here, as her inability to recall or provide any evidence to support her discrimination claims during her deposition indicates she has no personal knowledge of specific facts to support her claims. Furthermore, her testimony—via her verbal adoption of and reference to the general allegations in the complaint—merely provides conclusory assertions that some of her responsibilities were reassigned to others or her ability to telecommute changed during the relevant time period, the record fails to reflect sufficient evidence of any adverse action by Defendant. *No evidence* before this Court suggests that any of the changes to Plaintiff's work give rise to an inference of unlawful discrimination based on her race, color, or any asserted disability. Moreover, Plaintiff cannot satisfy the causation requirements of her prima facie case for any of her claims due to the admissions made during her deposition. See Comcast Corp. v. Nat'l Ass'n of African American-Owned Media, 140 S. Ct. 1009, 1014–15 (2020); University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013) (Title VII retaliation); Gentry v. East West Partners Club Mgt. Co, Inc., 816 F.3d 228, 235-36 (4th Cir. 2016) (ADA); Baldwin v.

---

[3] The Court has previously ruled—for purposes of the motion to dismiss the Title VII claims—the relevant time period to be June 15, 2018, to June 27, 2019, which is the time frame reflected in the EEOC Charge based on allegations of continuing discriminatory and retaliatory conduct. (See Doc. No. 21, p. 16; Doc. No. 17-3). Defendant now argues the time period to be more limited to only January 7, 2019, which is 180 days from the date of the filing of the EEOC charge. The Court finds that the record before it fails to provide sufficient evidence to support a continuing violation theory to proceed under Title VII that would allow a relevant time period beyond the 180 days. See 42 U.S.C. § 2000e-5(e)(1).

Duke Energy Corp., No. 3:12-cv-00212-MOC-DSC, 2013 WL 6056578 (W.D.N.C. Nov. 15, 2013) (FMLA retaliation) aff'd, 583 F. App'x 251 (4th Cir. 2014). Thus, summary judgment must be granted against Plaintiff on her Title VII, section 1981, and ADA discrimination claims.

B.     Hostile Work Environment under Title VII and Section 1981

"The elements [of a hostile work environment claim] are the same under either § 1981 or Title VII." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 to 184 (4th Cir. 2001) 242 F.3d 179, 184 (4th Cir. 2001). "To state a hostile work environment claim, [Plaintiff] must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her . . . race . . .; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764 (4th Cir. 2003); see also Jordan v. Alternative Resources Corp., 458 F.3d 332, 339 (4th Cir. 2006).

> The 'severe or pervasive' element of a hostile work environment claim has both subjective and objective components. First, the plaintiff must show that [s]he subjectively perceived the environment to be abusive. Next, the plaintiff must demonstrate that the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive.

EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (internal quotations and citations omitted).

Based on the record in this case, there is no evidence that Plaintiff experienced "severe or pervasive" harassment that altered the conditions of her employment and created an abusive atmosphere. Accordingly, summary judgment in favor of Defendant is appropriate for Plaintiff's hostile work environment claims.

C.      Retaliation Under Title VII, the ADA, Section 1981, and the FMLA

To establish a prima facie case for retaliation under Title VII, the ADA, Section 1981, and the FMLA, Plaintiff must show: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse action. Mercer v. Arc of Prince Georges Cnty., Inc., 532 Fed.App'x 392, 398 (4th Cir. 2013); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004); Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003) (applying the same requirements to retaliation claims under section 1981 and Title VII); Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (stating that the Title VII retaliation analysis is applicable to FMLA retaliation cases); see also Keene v. Thompson, 232 F. Supp. 2d 574, 584 (M.D.N.C. 2002); Williams v. Guilford Tech. Cmty. Coll. Bd. of Trustees, 117 F. Supp. 3d 708, 720 (M.D.N.C. 2015).

Here, it appears Plaintiff relies on changes to her telecommuting arrangement and removal of certain job duties and responsibilities to support her claims of retaliation. No evidence, however, suggests a causal connection between these modifications and any protected classification or protected activity. Indeed, nothing in Plaintiff's testimony specifically indicates any evidence to suggest these changes were made based on engaging in protected activity. To the extent Plaintiff contends the change in her job responsibilities after her FMLA leave suggest retaliation for taking such leave, no evidence supports this tenuous connection. And, as noted above, Plaintiff's inability to recall any evidence to support her claims outside of the general allegations of the operative complaint, indicates she has no personal knowledge of facts to support her claim. Summary judgment for Defendant on the retaliation claims is appropriate.

9

D.  Interference under FMLA

"To make out an 'interference' claim under the FMLA, an employee must demonstrate that (1) [s]he is entitled to an FMLA benefit; (2) h[er] employer interfered with the provision of that benefit; and (3) that interference caused harm." Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 427 (4th Cir. 2015) (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89, (2002); Wonasue v. Univ. of Md. Alumni Ass'n, 984 F.Supp.2d 480, 495 (D. Md. 2013)).

Plaintiff went on FMLA leave from August 20 through October 24, 2018, due to uterine fibroids. All medical leaves of absences for Cunningham within the relevant time period were processed through third party administrator, which approved her requested medical leave from August 20 through October 24, 2018. Plaintiff admitted that she did not have an example or evidence that any request for FMLA was not approved. No evidence shows Plaintiff was denied FMLA leave or was prevented from taking FMLA leave. Furthermore, no evidence suggests Plaintiff cannot show that Defendant interfered with her rights under the FMLA, and summary judgment is warranted.

IV.  **CONCLUSION**

For the reasons above, summary judgment against Plaintiff and in favor of Defendant is appropriate.

IT IS THEREFORE ORDERED that Defendant's Motion to Strike, (Doc. No. 88) is GRANTED, and Plaintiff's Response, (Doc. No. 85, 86), and "Response to Defendant's Reply," (Doc. No. 90), are STRICKEN.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment, (Doc. No. 79), is GRANTED. The Clerk is respectfully directed to CLOSE THE CASE.

IT IS SO ORDERED.

Signed: August 30, 2022

Frank D. Whitney
United States District Judge